UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | |
|---|---|
| GREGORY BUNCE, Individually and ) <br> as Personal Representative of the ) <br> Estate of Peter Bunce, and ) <br> EVELYN BUNCE, Individually ) <br>     Plaintiffs ) <br> ) <br>     v. ) <br> ) <br> GLOCK, INC., and ) <br> GLOCK GES m.b.H, ) <br>     Defendants ) | Case No. 2:23-cv-133-cr <br><br> Oral Argument Requested Pursuant <br> to LR 7(a)(6) |

**DEFENDANTS' MOTION FOR PROTECTIVE ORDER**

Defendants Glock, Inc. and Glock Ges.m.b.H. ("GLOCK"), by and through its attorneys, Renzulli Law Firm, LLP and Gravel & Shea PC, move for a protective order pursuant to F.R.C.P. 26(c). Many of Plaintiffs' interrogatories and requests for production issued to GLOCK seek information and documentation anywhere from a 30-year time period to a 40-year time period. In addition, Plaintiffs seek information and documents that are wholly irrelevant to the products liability claims set forth in their First Amended Complaint, and are clearly not proportional to the needs of this case.

Fed. R. Civ. P. 26(c) provides that the Court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." "A district court has discretion to decide when a protective order is appropriate and what degree of protection is required." *Bombard v. Volp*, 44 F. Supp. 3d 514, 529 (D. Vt. 2014) (citing *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984)). GLOCK seeks a protective order from this Court

narrowing the scope of discovery as to all of their demands to a reasonable and relevant time period keyed off a relevant event; as well as a restriction on the disclosure of irrelevant documents and information that is well outside the bounds of discovery in a design defect based case.[1]

## BACKGROUND

This matter arises out of an incident where Plaintiffs' three-year-old child found an unattended and unsecured Glock pistol ("Subject Pistol") in a nightstand drawer, resulting in a self-inflicted gunshot wound that instantly killed the child. In their First Amended Complaint ("Complaint"), Plaintiffs bring strict liability and negligence claims against GLOCK based on the pistol's alleged lack of certain features that they claim would have made the Subject Pistol "safer around children." (ECF Doc. 6, ¶ 1.) Specifically, Plaintiffs claim that the Subject Pistol was defective due to multiple "design defects" including its "action," "safety drop system," "safety components," "light trigger pull," "short trigger distance," and the "absence of a manual safety." (ECF Doc. 6, ¶ 31.) After the filing of this action, Everytown Law, the legal arm of Everytown for Gun Safety, filed an appearance as co-counsel on behalf of Plaintiffs. Everytown Law touts itself as "the largest and most experienced team of litigators in the country dedicated to advancing gun safety in the courts and through the civil and criminal justice systems."[2] While this case is pled as a traditional products liability case, the discovery being sought by Plaintiffs' counsel reaches beyond design issues, and into the area of defendants' general business practices, corporate structure, marketing strategies, and whether firearms have general utility in the self-defense context. This case should not devolve into a political, legislative or academic debate on whether

---

[1] As set forth in the accompanying affidavit, undersigned counsel certifies pursuant to Federal Rule of Civil Procedure 37(a)(1) and Local Rule 26(c)(2) that GLOCK has spent three months and countless hours attempting in good faith to meet and confer with Plaintiffs' counsel to avoid court intervention, but the parties are at an impasse. (See Affidavit of Jeffrey Malsch, Exhibit A.)
[2] https://everytownlaw.org/

firearms are an appropriate means of self-defense as Everytown Law is trying to make it; instead, it should stay focused on the design allegations in the Complaint.

Due to the vague nature of these defect claims in the pleadings, GLOCK requested specificity through written discovery. In response, Plaintiffs clarified that their design defect claims were due to the lack of "one or a combination of the following: a manual safety, a grip safety, a heavier and/or longer trigger pull, or user-authorized technology." (Plaintiffs' Answer to Interrogatory No. 6).[3] Plaintiffs also confirmed their negligence and product liability causes of action are not premised on a manufacturing defect claim.

Plaintiffs' product liability claims are focused solely on alleged design defects, and specifically, the absence of one or more of the above listed design features. Importantly for purposes of the scope of discovery, GLOCK has never disputed that it could have included one or more of the features (other than the "user-authorized technology" which is not feasible and never been commercially available) into the design of the Subject Pistol. Thus, the issue in this case is not one of feasibility; it is solely whether failing to include one or more of these features in the Subject Pistol in 1996 resulted in it being "dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics." *Webb v. Navistar Int'l Transp. Corp.*, 692 A.2d 343, 346 (Vt.1996). Again, Plaintiffs allege the pistol should be made "safer around children" – not by safely storing it – but by changing its proven design.

The Subject Pistol is a Glock Model 26 semi-automatic pistol that was manufactured by Glock Ges.m.b.H. in Austria and received by Glock, Inc. in Georgia on April 15, 1996. It was sold

---

[3] Plaintiffs marked the entirety of their Answers to Interrogatories as "Confidential" subject to the Protective Order in this matter. If the Court wishes to review these Answers in deciding this motion, GLOCK can file it under seal in a separate filing.

3

by Glock, Inc. to a national distributor located in Tennessee on April 18, 1996. This information is maintained by Glock, Inc. pursuant to federal law. Based on information obtained by the Plaintiffs through subpoena, and also required to be maintained pursuant to federal law, this Tennessee distributor received the pistol from Glock, Inc. on April 22, 1996, and it was sold to a firearm dealer in Florida called The Bargain Box on April 23, 1996. (Ex. B, CSS transaction record.)

Rebecca Post owned the Subject Pistol on the date of this incident, June 26, 2021. Plaintiffs previously sued Ms. Post and her employer prior to bringing this action against GLOCK, alleging that they were the cause of the death of their child based on her obvious failure to safely store her two pistols while children were in her home.[4] That matter was dismissed pursuant to a stipulation based on a confidential settlement. Ms. Post was gifted the Subject Pistol and a small Taurus pistol by her ex-husband. (Ex. C, Dep. of Post, pp. 25:7-20; pp. 65:17-66:6.) Ms. Post testified at her deposition in this case that she selected the Subject Pistol, back in the 2006 time-period, to use for self-defense, including concealed carry and home defense.[5] She also testified she was fully aware of the different features available on firearms, including conventional external manual safeties and grip safeties, and that she specifically chose the Subject Pistol (and her Taurus pistol) because of the benefits of the design in not including these features. (Id. at pp. 31:23-34:17; 45:10-46:8; 48:25-49:18; 87:21-88:7.) Ms. Post was trained that "the more obstacles you put in place, the less time you have available to you to respond [to a threat], to react, to create distance and get away to safety." (Id. at p. 189:17-19.). She further stated, "if you're under threat that a lot of times your

---

[4] 2:22-cv-00199-cr.

[5] *Id.*, pp. 27:20-28:10, p. 66:8-21 (small size important), p. 80:8-12 (responsible for her own safety), pp. 88:13-92:9 (why she maintained her pistols in the ready condition), p. 166:3-23 (a firearm can be an equalizer for a woman), p. 167:15-25 (need to defend herself and others), pp. 182:19-183:8 (utility of using a pistol for self-defense), pp. 187:11-188:14 (importance of maintaining a self-defense pistol in an accessible and ready to use condition), pp. 194:22-195:11 (lived alone and felt threatened in the past), pp. 195:12-196:6 (reason to maintain pistol in ready condition), and pp. 201:10-202:10 (reasons she chose Glock 26 pistol).

brain will shut down, your inability to think, you react. And so having the extra step to have to turn the safety off can limit the amount of time you have to separate from an attacker and get away. It's another process your brain has to think through, and you have manual dexterity that's required, fine motor skills, that can be inhibited." (Id. at p. 34:2-17.) As such, based on her circumstances, training, and intended use, the simplicity of the controls on the Glock pistol, including the lack of a conventional manual safety, made it the right choice for her. (Id. at pp. 87:21-88:7.) The Taurus pistol was smaller and lighter than her Glock pistol, and just like her Glock pistol, it had no external manual safety. (Id. at pp. 66:8-67:8.) At no time did she ever consider purchasing a firearm with an external manual safety because she trained with the Glock pistol, it was the "right one" for her, and "others didn't make sense." (Id. at pp. 87:21-88:7.) She testified that even if her firearm included a manual safety, she would not necessarily have used it. (Id. pp. 237:14-238:10.) Finally, Ms. Post testified that she never read a GLOCK owner's manual, never viewed any GLOCK advertisements, and never heard the term "Baby Glock" before this incident. (Id. at pp. 47:11-48:3.)

Based on the scope of the discovery promulgated by Everytown Law[6] in this case, its apparent goal is to acquire as must information as possible from GLOCK, under the guise of a products liability case. This is improper, and if not quashed, it will unreasonably and dramatically increase the time and cost associated with discovery, motion practice and trial. Narrowing the

---

[6] Everytown Law promotes filing lawsuits against the firearms industry and has other pending litigation against GLOCK, and it appears that this firm is improperly using this case to accumulate information for use in those other, unrelated matters. (https://everytownlaw.org/case/). Everytown Law publishes a "Firearms Litigation" manual with a sub-title of "A Practitioner's Guide to PLCAA and Beyond." (Ex. D, excerpts only.) In the Introduction, this firm states, "[H]olding members of the firearms industry accountable … can also have a meaningful impact on the safety of your community and the nation by incentivizing the industry to reform…. (Ex. D. at p. 1.) This "handbook" specifically advances suing firearm manufacturers when children gain access to firearms. (Id. at p. 10.)

scope of discovery to the actual claims and defenses in the case at this early stage will benefit all parties, except Everytown Law.

Despite the narrowly tailored design defect allegations and claims formulated by Plaintiffs, Plaintiffs served GLOCK with far-reaching interrogatories and requests for the production. GLOCK timely responded with objections and responses over objection in many cases. (Ex. E - Glock, Inc.'s Objections and Answers to Plaintiffs' First Set of Interrogatories; Ex. F - Glock, Inc.'s Objections and Responses to Plaintiffs' First Set of Requests for Production; Ex. G - Glock, Inc.'s Objections and Responses to Plaintiffs' Second Set of Requests for production; Ex. H - Glock, Ges.m.b.H.'s Objections and Answers to Plaintiffs' First Set of Interrogatories; Ex. I - Glock, Ges.m.b.H.'s Objections and Responses to Plaintiffs' First Set of Requests for Production). GLOCK has produced close to 1200 pages of documents. However, this discovery includes requests for information and documents spanning up to 40 years. Under no circumstances based on the facts and claims in this case should GLOCK be forced to search for and produce information and documents spanning 40 years (basically the life of the companies). In addition, all requests for information and documents from GLOCK that pertain to the decision-making by GLOCK almost 40 years ago to incorporate or not incorporate certain design features after the production and sale of this pistol in April of 1996 are irrelevant. *See Fine v. Facet Aerospace Prods. Co.*, 133 F.R.D. 439, 443 (S.D.N.Y. 1990) ("the party seeking discovery need not prove its case on the merits in order to obtain disclosure. It must, however, make some threshold showing of relevance before the opposing party is obligated to open to discovery a variety of designs not directly at issue in the litigation.") Finally, all requests for information and documentation unrelated to Plaintiffs' design defect based claims (either strict liability or negligence) should be prohibited.

6

After exhaustive meet and confer communications over the past three months, both written correspondence and multiple Teams meetings (*See* Exhibit A), Plaintiffs never offered to narrow the time frame of their requested by any measurable amount (moving from "1990" to "January 1, 1991"). GLOCK offered to search for and produce documents for the five (5) period prior to the incident date - already having produced marginally relevant documents beyond that time frame, including design drawings and owner's manuals – but Plaintiffs rejected that proposal. GLOCK respectfully requests that the Court resolve these issues so that the case can proceed efficiently and on topic.

## **ARGUMENT**

Plaintiffs' written discovery to GLOCK improperly seeks to expand the discovery beyond the facts, circumstances, claims and defenses in this case. Almost all of Plaintiffs' requests include an unreasonable time frame, and thus seek irrelevant information on events that occurred long after GLOCK manufactured and sold this pistol in 1996. They also seek information that can have no bearing on the design defect allegations in this case.

1. *A Temporal Restriction Is Necessary Because Plaintiffs' Claims Are Limited to Whether or Not the Subject Pistol was Designed Defectively in 1995-1996.*

GLOCK requests a protective order to the extent Plaintiffs seek information and documentation from any time period after April of 1996, when GLOCK manufactured and sold the Subject Pistol, or an alternative reasonable time period keyed off a relevant event. Although relevance under Rule 26 is construed broadly, Plaintiffs "must make a prima facie showing that the discovery sought is more than merely a fishing expedition." *See Williams v. Fire Sprinkler Assocs. Inc.*, 2017 WL 1155771, at *2 (E.D.N.Y. Mar. 27, 2017) (citation omitted). "The party seeking discovery bears the initial burden of proving the discovery is relevant, and then the party withholding discovery on the grounds of burden [or] expense ... bears the burden of proving the

7

discovery is in fact ... unduly burdensome and/or expensive." *Hoehl Fam. Found. v. Roberts*, No. 5:19-CV-229, 2021 WL 3677837, at *3 (D. Vt. May 27, 2021). Moreover, even if the discovery sought has remote relevance, the Court has the discretion to impose temporal limitations to manage the burden and expense of discovery. *See, e.g., Chaney v. Vermont Bread Co.*, 2022 WL 16757624, at *2 (D. Vt. Nov. 8, 2022) (limiting discovery to events that occurred two years prior to the alleged statutory violations); *Sky Med. Supply Inc. v. SCS Support Claim Servs., Inc.*, 2017 WL 1133349, at *11 (E.D.N.Y. Mar. 24, 2017) (noting that enlarging the "temporal period would result in an undue burden which outweighs the potential benefit"); *Cleary v. Kaleida Health*, 2023 WL 6209682, at *3 (W.D.N.Y. Sept. 25, 2023) (denying plaintiffs' motion to broaden the discovery period because plaintiffs' allegations "do not support the expansive time frame urged by plaintiffs").

The following discovery requests are just a sample of the unreasonable timeframes set forth in most of Plaintiffs' demands:

Interrogatory No. 8 (Glock, Inc.): Identify and summarize all complaints, comments, or reviews You have received, or to your knowledge Glock Ges.m.b.H. has received, **in the ten years prior to the date of manufacture for the Subject Pistol to the present** regarding (i) accidental or unintentional shootings with Glock firearms; (ii) lack of active safety features on the Glock firearms; (iii) the Glock 26 pistol; and (iv) Glock's instructions and/or advice on firearm safety.

**ISSUE:** Plaintiffs initially sought all such "complaints, comments, or reviews" from 1986 to 2024 – 38 years of information. The parties came to an agreement to limit this request to other similar incidents (OSI) and only involving children 10 years old or younger. However, the parties could not agree on a relevant or reasonable time frame. Plaintiffs later agreed to narrow the request to 1990 to 2021, still 31 years of information. GLOCK's position is that only prior similar claims are discoverable, but even with this restriction, 31 years of such information cannot be relevant to claims in this case. This request must be limited to a reasonable time period.

Interrogatory No. 12 (Glock, Inc.): Identify and summarize all research, reports, studies, focus groups, and market studies prepared, commissioned or reviewed by You or Glock Ges.m.b.H. pertaining to the use and possession of firearms for self-defense, including, but not limited to, such research, reports, studies, focus groups or market studies aimed at families or women.

8

**ISSUE:** No time period was initially included. Over objection, GLOCK responded to this question as to any requested information "prepared or commissioned" by GLOCK. However, Plaintiffs refuse to limit the request in that regard, and instead insist the GLOCK identify all "research, reports or studies … <u>reviewed</u>" by GLOCK on this broad topic area (self-defense) over the last 35 years (1986-2021), which is impossible to do for a corporation.

<u>Requests for Production Nos. 1, 5, 7-20, and 25 (Glock Ges.m.b.H.)</u>: Every one of these requests includes a time period "from 1990 to the present."

**ISSUE:** By letter dated January 30, 2025, Plaintiffs proposed a "compromise" of January 1, 1991, to June 26, 2021.[7] Again, just a search for the requested documents for a 30 year time period is unduly burdensome and cannot be proportional to the needs of the case.

Due to the length of time the Glock Model 26 pistol has been produced, continuously since 1996, a 29 year time-period is simply not reasonable or proportional on its face "for all documents" in the areas for which Plaintiffs seek information and documents, even for a topic that could be marginally relevant here, such as other similar incidents. "Decisions regarding proportionality are squarely within a trial court's discretion; a court must consider a wide range of factors and make common sense decisions about whether or not the discovery in question goes too far." *Jenkins v. Miller*, No. 2:12-CV-184, 2019 WL 5561387, at *2 (D. Vt. Oct. 29, 2019).

While this issue is made more difficult given the amount of time that elapsed from the date of manufacture to the incident, that does not relieve Plaintiffs of the initial burden to show why 30 years of records of OSI, or design drawings, or marketing campaigns, or revisions to instruction manuals, just as examples, are relevant and proportional. GLOCK has produced design drawings for the Subject Pistol, despite the fact that Plaintiffs are not making a manufacturing defect claim and feasibility of Plaintiffs' alleged defects in this design is not in question. Further, GLOCK produced the owner's manuals that would have accompanied the Glock Model 26 pistol from 1996 to 2021. A manageable time period before either the date of production of the Subject Pistol or prior to the date of this incident needs to be established before further searches or productions.

---

[7] It is unclear how Plaintiffs conjured the "1990" or the "January 1, 1991" start dates for these production requests.

Finally, in Vermont, "[A] manufacturer [ ] has a duty to warn users and consumers when it knows or has reason to know of dangers inherent in the product at the time the product is sold… or when the product is dangerous to an extent beyond that which would be contemplated by an ordinary consumer." *Drake v. Allergan, Inc.*, 63 F. Supp. 3d 382, 389 (D. Vt. 2014). The first clause clearly has a cut-off date of "at the time the product is sold." Further, the second clause is only implicated when a latent defect is alleged. Here, the dangers associated with leaving a loaded firearm accessible to a child are patent and obvious to the ordinary consumer, and has been since the invention of the cartridge firearm in the 1800s. Plaintiffs' failure to warn claim does not provide them with a pass to seek discovery beyond 1996.

   2. *A Relevance Limitation is also Necessary to Keep the Case Focused on the Claims and Defenses*.

Fed. R. Civ. P. 26(b)(1) provides that parties "may obtain discovery regarding any nonprivileged matter <u>that is relevant</u> to any party's claim or defense <u>and proportional to the needs of the case</u>…" (emphasis added). Further,

> Determinations of issues of "undue burden" are committed to the discretion of the trial court. *See, e.g., In re Subpoena Issued to Dennis Friedman*, 350 F.3d 65, 68–70 (2d Cir.2003); *Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 49 (S.D.N.Y.1996); *see also* Fed. R. Civ. P. 26 1970 advisory committee's note ("Rule 26(c) . . . confers broad powers on the courts to regulate or prevent discovery even though the materials sought are within the scope of [discovery under Fed. R. Civ. P.] 26(b), and these powers have always been freely exercised."); *Herbert*, 441 U.S. at 177, 99 S. Ct. 1635 ("[T]he district courts should not neglect their power to restrict discovery" under Fed. R. Civ. P. 26(c) and "should not hesitate to exercise appropriate control over the discovery process.").

*Jones v. Hirschfeld*, 219 F.R.D. 71, 74 (S.D.N.Y. 2003). Using this Court's "broad powers" to regulate the course of discovery, GLOCK seeks an order narrowing the issues set forth in Plaintiffs' discovery requests.

The following discovery requests exemplify the broad range of topics that are wholly unrelated to the design defect claims in this case:

<u>Interrogatory No. 14 (Glock, Inc.)</u>**:** Identify **any persons or entities that have provided advice, coordination, assistance, or other services concerning warnings, human factors analyses, advertising, marketing, public relations, market research, focus groups, social or online media monitoring, product promotion, and/or product placement for Glock pistols** in the United States fom [sic] 10 years prior to the Subject Pistol's date of manufacture to the present. For each such person or entity listed, describe the nature of the relationship with Glock, Inc. or Glock Ges.m.b.H., the nature of the services provided, the time period during which those services were provided, and identify the person at each entity who was/is responsible for the provision of services to Glock, Inc. or Glock Ges.m.b.H.

**ISSUE:** None of this information is remotely relevant to the design defect claims in this case. GLOCK produced the documents that would have accompanied the Subject Pistol when it was sold in 1996.

**Requests For Production No. 5 (Glock, Inc. and Glock Ges.m.b.H.):** All Documents related to the development, testing, and design of the Glock 26 pistol including blueprints, engineering drawings, technical specifications, product testing, quality testing, surveys, and reports.

**ISSUE:** As specifically alleged in the Complaint, this is a design defect case regarding certain features that Plaintiffs maintain would have made the pistol "childproof." Plaintiffs concede the pistol functioned as designed and manufactured. Plaintiffs' claims concern allegations that the Subject Pistol was defective because it lacked certain additional features, such as an "external safety mechanism, 8-lb trigger pull, trigger blocks, child proofing, [or] user-authorized technology." The existence or non-existence of these features on the Subject Pistol is not in dispute. As such, engineering drawings and technical specifications for this pistol for the past 26 years are not relevant to Plaintiffs' claims and not proportional to the needs of the case. Moreover, there is no way to "childproof" a semi-automatic pistol through design. Nonetheless, Glock Ges.m.b.H. provided Plaintiffs with certain design drawings (frame, slide and trigger group) for the Subject Pistol.

**Requests for Production Nos. 7, 8, 9, 10, 12, 13, 14, 15, 16, 17, 18, 19 and 21 (Glock, Inc. – with identical requests to Glock Ges.m.b.H.), such as**:

No. 7: All Documents, Reports, and Communications regarding the risk of Glock pistols being handled by, or accidentally or unintentionally fired by, children under the age of eighteen, including (but not limited to) reports, studies, surveys, test results, data, public statements, sponsored statements, discussions, or assessments;

No. 10: For the past ten years, all Documents and Communications reflecting testing or discussion of marketing strategies, warnings, media buying, advertisements, copy, and creative by You related to marketing Glock firearms to women, children, customers with children, or home defense, including but not limited to market studies, focus groups, human factors analyses, consultant reports, memoranda and emails relating to potential purchasers of the Glock firearms.

11

No. 12: Documents sufficient to show Your corporate and management structure and company personnel, including a list of all employees involved in the development or marketing of the Glock 26, corporate organizational documents, bylaws, articles of incorporation, personnel manuals, organizational charts, and training policies and manuals for employees in place at any time from 1990 to the present.

No. 14: All Documents and Communications related to the warning that consumers should "Prevent child access by always keeping guns locked away and unloaded when not in use," including data, research, and studies conducted at any time on the subject of how often the foregoing warning is followed by the average Glock customer without law enforcement training.

No. 15: All Documents and Communications related to data, research, and studies conducted on the subject of how effective a Glock firearm is as a weapon used for home defense if it is locked away and unloaded when not in use.

No. 16: All Documents and Communications related to data, research, and studies conducted on the subject of how many seconds it takes to fire a Glock pistol that is locked away and unloaded.

No. 17: All Documents and Communications related to data, research, and studies conducted on the subject of how many seconds it takes homeowners using firearms for self-defense to disengage a manual safety.

No. 18: All Documents and Communications related to data, research, and studies conducted on the subject of the different consumer expectations for the safe use of a Glock firearm by the average homeowner as opposed to law enforcement.

No. 19: All Documents and Communications related to data, research, and studies conducted on the subject of the average consumer's understanding of Glock's unique "Safe Action" trigger safety and trigger system.

No. 21: Documents reflecting the relationship between [the two GLOCK entities], from the time of the manufacture of the Subject Pistol to the present, including, not limited to: (1) documents sufficient to identify the Board members of each entity in each year; (2) documents sufficient to identify any employees that the two entities have or had in common from 1996 to the present; (3) documents sufficient to show Glock, Inc. and Your relative roles in the design and engineering of Glock pistols, including the Glock 26.

**ISSUE:** These requests seek information as to the general utility, effectiveness, and risks associated with firearms, which are not relevant to a design defect analysis of a specific firearm. They also seek general information about the GLOCK entities and various warnings and instructions created and published by GLOCK. The paperwork that originally accompanied the Subject Pistol when it was distributed by Glock, Inc. has been produced.

Any additional materials in this regard, whether they be reports, studies, papers, marketing or advertising, have no relevance to the claims in this case.[8]

**Requests For Production No. 27 (Glock Ges.m.b.H.) and No. 27 (Glock, Inc.):** All Documents related to Your and/or Glock, Inc.'s submission of a handgun for consideration to the U.S. Military in response to Army RFP No. W15QKN-15-R-0002 and as reflected in the Government Accountability Office's June 5, 2017, decision denying Glock, Inc.'s protest of the denial of the award (available here: https://www.gao.gov/assets/b-414401.pdf).

**ISSUE:** In 2016, GLOCK responded to a request for proposal issued by the U.S. Army for a new "Modular Handgun System" (MHS). GLOCK responded to the request for proposal conforming to the U.S. Army's mandated specifications. GLOCK was not awarded this contract, primary based on pricing. These materials are not relevant to the claims or defenses in this case, and certainly do not meet the proportionality test when it requests "all documents" related to this highly confidential submission and protest to the U.S. Government for a military weapons system.

Topics like how many seconds it takes a person to retrieve, load, and use a firearm, or GLOCK's submission of a handgun for consideration to the U.S. Military in 2016, or the corporate structure and relationship between the GLOCK entities for the past 30 years have no bearing on whether this particular pistol was defective in design. Plaintiffs' original theory may have been that some of this information (i.e. manuals, marketing and advertising) could have influenced Ms. Post's decision to select or acquire the Subject Pistol, or even how she used and stored the Subject Pistol after 2006. However, Ms. Post testified that she never reviewed the instruction manual for the Subject Pistol and had no recollection of reading any advertisements or marketing materials regarding Glock pistols either before or after she came to possess or own the Glock Model 26 pistol. (Ex. C, Post Dep. pp. 47:19-48:1; 87:3-10; 170:2-10). She unequivocally testified that she selected the Glock Model 26 pistol to use for self-defense purposes based on her training in Florida and the specific design features of semi-automatic pistols as explained to her by her firearm instructor. (Id. at p. 181:3-21.) In fact, she testified that she was not aware of "any marketing that

---

[8] Further, the production of any such materials in response to any of these requests for a 35 year period is patently unreasonable and cannot be proportional to the needs of the case.

promoted the Glock 26 or Glock handguns generally as suitable for self defense." (Id. at p. 202:7-10.) Despite this testimony, Plaintiffs insist on obtaining all marketing and advertising related documents, including any "data, research, and studies" related to such publications, for the 25 years after GLOCK sold this pistol and drafted the subject instructions and warnings.

*Griffin v. Johnson & Johnson*, No. 2:21-CV-134, 2024 WL 3023600 (D. Vt. June 17, 2024) is instructive on several points. There, Judge Sessions ruled on numerous discovery issues, but as relevant to the issues here, he made several key rulings. First, he held that plaintiff's request for production of "all communications and all data (written, electronic, or oral) with FDA related to each model of the recalled staplers" was overbroad and unduly burdensome. *Id*. at *6. Here, Plaintiffs have requested "all documents and communications" for all GLOCK pistols related to numerous issues unrelated to Plaintiffs' design defect claims. In addition, Judge Sessions ruled that the product manufacturer defendant was "not obliged to turn over complaint files that have no bearing on the case." *Id*. at *7. Here, requesting "all Documents, Reports, and Communications regarding the risk of Glock pistols being handled by, or accidentally or unintentionally fired by, children;" or "all Documents and Communications related to data, research, and studies conducted on the subject of:" 1) how effective a Glock firearm is as a weapon used for home defense, 2) how many seconds it takes to fire a Glock pistol that is locked away and unloaded, 3) how many seconds it takes homeowners using firearms for self-defense to disengage a manual safety, 4) the different consumer expectations for the safe use of a Glock firearm, or 5) the average consumer's understanding of Glock's unique "Safe Action" trigger safety and trigger system, have no "bearing" on the claims of design defect in this case.

In *Chaney v. Vermont Bread Co.*, 2:21-CV-120, 2022 WL 16757624, at *2 (D. Vt. Nov. 8, 2022), Judge Sessions, in dealing with a motion for protective order pertaining to an overly broad

14

deposition notice, held that "the breath of such questioning ... must be tailored to ultimately support Plaintiffs' 'single employer' claim as it pertains to this case." Here, Plaintiffs' discovery requests go well beyond their "design defect" claim, so their discovery needs to be "tailored" to such claims. Judge Sessions stated, "The Rule 30(b)(6) deponent should be prepared to answer only such questioning, and need not come to the deposition equipped with knowledge beyond that which is relevant to the facts, allegations, and legal theories presented by the parties." The same holds true here regarding Plaintiffs' overly broad discovery requests. These requests must be limited to the facts, allegations and legal theories presented by the Plaintiffs.

## CONCLUSION

For the reasons stated above, GLOCK requests a protective order temporally limiting each of Plaintiffs' discovery requests to a reasonable and relevant time frame. In addition, GLOCK requests a protective order striking the following discovery requests to the extent they include irrelevant information not proportional to the needs of the case: Plaintiffs' Interrogatory (to Glock, Inc.) Nos. 11, 12, 14; Plaintiffs' Interrogatory (to Glock Ges.m.b.H.) Nos. 7, 8, 11, 12; Plaintiffs' Request for Production (to Glock, Inc.) Nos. 8, 9, 10, 12, 13, 14, 15, 16, 17, 18, 21; Plaintiffs' Second Request for Production (to Glock, Inc.) Nos. 25, 27, 30; and the corresponding similar requests for production to Glock Ges.m.b.H.

GLOCK requests oral argument pursuant to Local Rule 7(a)(6).

     s/ Jeffrey Malsch
Christopher Renzulli, Esq. (Pro Hac Vice)
Jeffrey M. Malsch, Esq. (Pro Hac Vice)
RENZULLI LAW FIRM, LLP
One North Broadway, Suite 1005
White Plains, NY 10601
(914) 285-0700
jmalsch@renzullilaw.com
crenzulli@renzullilaw.com

and

Matthew B. Byrne, Esq.
Brooks G. McArthur, Esq.
Gravel & Shea PC
76 St. Paul Street, 7th Floor, P.O. Box 369
Burlington, VT  05402-0369
(802) 658-0220
mbyrne@gravelshea.com
bmcarthur@gravelshea.com

Attorneys for Defendants

## CERTIFICATE OF SERVICE

I, Jeffrey Malsch, hereby certify that this document was filed with the Clerk of the Court via CM/ECF. Those attorneys who are registered with the Court's electronic filing system may access this filing through the Court's CM/ECF system, and notice of this filing will be sent to these parties by operation of the Court's electronic filings system.

Dated: February 21, 2025

By:   */s/ Jeffrey Malsch*
      Jeffrey Malsch
      jmalsch@renzullilaw.com