**UNITED STATES DISTRICT COURT**
**FOR THE**
**DISTRICT OF VERMONT**

| | | |
|---|---|---|
| GREGORY BUNCE, Individually and as Personal Representative of the Estate of Peter Bunce, and EVELYN BUNCE, Individually<br>Plaintiffs | ) | Case No. 2:23-cv-133-cr |
| v. | ) | |
| GLOCK, INC., and GLOCK GES m.b.H,<br>Defendants | ) | |

**DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION TO FURTHER AMEND THE STIPULATED DISCOVERY SCHEDULE**

Defendants Glock, Inc. and Glock Ges.m.b.H. ("Glock"), by and through its attorneys, Gravel & Shea PC and Renzulli Law Firm, LLP, file this response to Plaintiffs' recent motion to again extend the discovery deadlines. While Defendants do not oppose Plaintiffs' counsel's request to extend the expert discovery schedule based on the recent departure of the lawyers from Everytown Law, Defendants object to the extension of the fact discovery deadline.[1] Fact discovery is complete. All fact depositions that any party has sought and/or were approved by the Court have been completed. Written discovery is also complete. Defendants have fully responded to all proper discovery demands. The departure of the attorneys from Everytown Law cannot be used by Plaintiffs to now rehash old issues, ask this Court to revisit prior rulings, and bring new discovery issues to the forefront. Everytown Law's counsel were attorneys of record with Ms. White for the

[1] Plaintiffs' counsel forwarded the proposed motion to Jeffrey Malsch and Christopher Renzulli on September 28, 2026. However, Mr. Malsch was traveling out of the country from September 25 to October 4, and Mr. Renzulli was out of the office for out of state commitments during that same time frame. After the filing of the motion, discussions were held with counsel regarding various issues, but no agreement was reached as to completing additional fact discovery.

duration of this litigation up until September 28, 2026. Plaintiffs must abide by their decisions and agreements despite their recent withdrawal.

Defendants' counsel and the lawyers at Everytown Law met and conferred extensively on various issues related to document productions. Ms. White was present during some of these meetings, but not in others. As a result of these meetings in September of 2026, Defendants made a final production in connection with a Supplemental Initial Disclosure Statement pursuant to Rule 26(a). From Defendants' perspective, they have provided all responsive documents pursuant to Plaintiffs' discovery demands and complied with all agreements made with the Everytown lawyers.

However, yesterday, October 15, 2026, Ms. White sent an email outlining four (4) perceived discovery disputes. *See* Exhibit 1. As outlined below, these issues have either already been address in the prior meet and confers, have already been decided by this Court, or are new issues that are too late to address at this stage in the litigation. Defendants bring these "discovery" issues to the Court's attention solely to apprise it of what appears to be the basis of the request for an extension of the fact discovery deadline, and why that specific request should be denied.

The "First Meet and Confer Dispute" concerns Glock's response to Plaintiffs' Request for Production No. 41:

> **REQUEST FOR PRODUCTION NO. 41:** Documents or Communications related to any facts, data, reports, analyses, expert opinions, statements, information, or conclusions by law enforcement agencies in deciding whether such agency should use a Glock pistol as a service weapon, regardless of whether such agency ultimately began using a Glock pistol. This request specifically includes, but is not limited to, all instances when federal, state, or local law enforcement agencies decided not to use a Glock pistol.
>
> **RESPONSE:** Glock objects to this Request on the basis that it is vague, overly broad (i.e., "all instances when federal, state, or local law enforcement agencies decided not to use a Glock pistol"), not limited to a reasonable time period, and not proportional to the needs of the case as required by Rule 26(b)(1) because the request is not limited to the alleged product defect claims in the Complaint. Without waiving or limiting the foregoing

> objections, see GLOCK000041-GLOCK000573. Glock is nonetheless amenable to meet and confer regarding the intent and scope of this Request beyond what has already been produced.

A meet and confer was thereafter conducted and Mr. Miller from Everytown indicated that, in addition to the 532 pages of responsive documents already provided, Plaintiffs were specifically seeking any further documents in the possession of Glock where a law enforcement agency provided a report to Glock explaining why it did not adopt the Glock pistol pursuant to a request for proposal. During the meet and confer process, the undersigned informed the lawyers at Everytown that no additional documents were maintained by Glock in this regard.

Then, in Ms. White's October 15 email, for the first time in this case, Plaintiffs requested two specific reports – the "Lt John Rutherford report issued in the late 1980s out of the Jacksonville Sheriff's Department" and a "Fort Benning report" and/or an "FBI report in the late 1980s." Defendants' counsel was able to locate copies of these reports and provide them to Plaintiffs as a courtesy earlier today. As such, there is no "dispute" as Defendants have no additional reports from law enforcement agencies to produce in response to this request.

The "Second Meet and Confer Dispute" pertains to emails produced by Defendants. As this Court may recall, the subject of ESI discovery was addressed by the Court early in discovery. The Court agreed that Plaintiffs' number of requested ESI custodians was too broad and ordered the Plaintiffs to select five custodians from each Defendant for purposes of searching emails. The parties then met and conferred and came to an agreement on an agreed-to set of search terms for these custodians. *See* Exhibit 2 (extensive email string related to ESI custodians and search terms). Defendants completed this search for each designated custodian and, on March 2, 2026, produced all responsive emails.

Since that time, Plaintiffs deposed the Defendants' 30(b)(6) witnesses and several former employees; and no testimony was revealed in any of these depositions that would indicate that the ESI production was deficient in any manner. In addition, Plaintiffs never requested for searches of additional custodian accounts or using a different set of search terms. Only in Ms. White's email of October 15 is there a "complaint" of there being only one email "originated from a Glock employee and was sent to other Glock employees." Defendants are not sure how to respond, other than to say that the searches were completed based on Plaintiffs' identified custodians and the agreed-upon search terms, and all responsive emails were produced.

The "Third Meet and Confer Dispute" concerns the identification of additional witnesses. Defendants have identified every witness they intend to rely upon at trial, and every person responsive to Plaintiffs' discovery demands. Ms. White lists a number of persons identified by Mr. Jannuzzo at his recent deposition, and based solely on his testimony, claims somehow that the Defendants are required to supplement their "disclosures and answers to [Interrogatories] with information" about those witnesses. The basis of this request for supplementation is that, "Glock is obviously going to defend this case by citing the fact that so many LE agencies converted to Glock in the early 1990s and beyond. Therefore, any employees who were instrumental in the sales and marketing effort at that time have discoverable information."

As Defendants have noted on many prior occasions, this is a products liability case with a claim that the Glock pistol involved in this tragic event was defective in design because it lacked an external manual safety lever, a grip safety, and/or a heavier or longer trigger pull. Upon information and belief, these identified witnesses, some of whom are deceased, have no relevant information as to the claims and defenses of this case, and as such, Defendants have no obligation to supplement discovery in this regard. Sales and marketing efforts to law enforcement agencies

are not issues relevant to a design defect analysis. Defendants do not intend to call any of these "sales and marketing" personnel as witnesses at any trial of this matter.

Finally, in Plaintiffs' "Fourth Meet and Confer Dispute," Plaintiffs again request that Glock produce its MHS Army submission, which the Court has already ruled is not discoverable. *See* May 29, 2025 hearing transcript. On this exact issue, the Court initially indicated, " I can't imagine why a court would allow you to introduce at trial evidence that Glock prepared -- manufactured a firearm for the U.S. military with a manual safety because, yeah, they concede 'We could put a safety in.' So it would take us way off track. It's not proportional. Unless I'm missing something." *Id.* at p. 20:16-21. After argument on this issue, the Court held to its initial impression, "I'm not going to allow this discovery. It is a totally different population group. I think it's highly unlikely that in the proposal there are any kind of hyperbolic statements, like this is the safest, most reliable, most desirable firearm. Having seen submissions to federal government, there's just not generally sections where there's that kind of description. They're looking at the technical feasibility. I can't see how it would be admissible in establishing in Vermont a reasonable consumer similarly situated to the plaintiffs in this case are going to hear about a submission to the military, especially if the defendants are not contesting that, 'Yes, we could put this in there. We have put it in there.'" *Id.* at p. 30:9-22. This discovery issue has been decided and nothing in the course of discovery since the Court's rulings has changed on those issues.

Ms. White also now requests, for the first time, "documents related to the design, manufacturer, alterations, and dissemination of the 19X" and "identities of individuals involved in placing the 19X into the stream of commerce after 2018 without a manual safety." Initially, if this email is to be considered a supplemental demand for production or interrogatory, it is too late, even if the Court extends the discovery deadline to November 4. Substantively, the requests are not

reasonably calculated to lead to discoverable evidence and are not proportional to the needs of the case. This case involves a Glock Model 26 pistol that was manufactured and sold by Glock in 1996. The introduction of a new model pistol, the 19X, in or about 2018, and any decision-making as to what types of features it would include 22 years after the subject pistol was placed into the stream of commerce, cannot in any way implicate the design based claims and defenses in this case. This also includes any information about a different model pistol with a manual safety sold to Norway according to Mr. Jannuzzo, who has not worked at Glock since 2003. Again, Glock has not and does not dispute that it is feasible to incorporate an external manual safety lever on the Glock pistol, and that it has successfully done so. It is Glock's contention and firm belief, and proven by its wide-spread adoption by consumers throughout this country, with the design being copied by virtually all other firearm manufacturers, that an external manual safety is not required to design and sell a safe and reliable self-defense pistol; and in many cases, this feature can be a detriment to its use for self-defense purposes. It is beyond dispute based on all the fact testimony given to date in this case, including the recent depositions of Mr. Carmichael, Mr. Ayoob and Mr. Jannuzzo pursued by Plaintiffs, that a Glock pistol with a conventional external manual safety would be a detriment to the user – particularly when being used for self-defense purposes.

Defendants understand that Ms. White may need 30 days to assess the status of her file, connect with experts that may have been retained by the Everytown lawyers, and become fully familiar with prosecuting this case going forward. But Plaintiffs cannot use this change in circumstances as an excuse to further delay the completion of fact discovery and further burden the Defendants with immaterial and unfounded discovery disputes. As such, the Court should deny Plaintiffs' request to extend the fact discovery deadline; and if it deems there to be good cause,

only extend the deadlines related to expert disclosures, the completion of expert depositions, and service of requests for admissions for purposes of streamlining evidentiary issues at trial.

Dated: October 16, 2026

Respectfully submitted,

s/ Jeffrey Malsch

Christopher Renzulli, Esq. (Pro Hac Vice)
Jeffrey M. Malsch, Esq. (Pro Hac Vice)
Patrick McDonald, Esq. (Pro Hac Vice)
RENZULLI LAW FIRM, LLP
One North Broadway, Suite 1005
White Plains, NY 10601
(914) 285-0700
jmalsch@renzullilaw.com
crenzulli@renzullilaw.com

and

Matthew B. Byrne, Esq.
Brooks G. McArthur, Esq.
Gravel & Shea PC
76 St. Paul Street, 7th Floor, P.O. Box 369
Burlington, VT 05402-0369
(802) 658-0220
mbyrne@gravelshea.com
bmcarthur@gravelshea.com

Attorneys for Defendants

**CERTIFICATE OF SERVICE**

I, Jeffrey Malsch, hereby certify that this document was filed with the Clerk of the Court via CM/ECF. Those attorneys who are registered with the Court's electronic filing system may access this filing through the Court's CM/ECF system, and notice of this filing will be sent to these parties by operation of the Court's electronic filings system.

Dated: October 16, 2026

By: *_/s/ Jeffrey Malsch_*
Jeffrey Malsch
jmalsch@renzullilaw.com