**UNITED STATES DISTRICT COURT**
**DISTRICT OF VERMONT**

| | | |
|---|---|---|
| **GREGORY BUNCE,** Individually and as Personal Representative of the Estate of Peter Bunce, and<br><br>**EVELYN BUNCE,** Individually,<br><br>Plaintiffs,<br><br>v.<br><br>**GLOCK, INC.** and **GLOCK GES.M.B.H.,**<br><br>Defendants | ) | **Case No. 2:23-cv-133-cr** |

**<u>PLAINTIFFS' RENEWED MOTION TO COMPEL DISCOVERY</u>**

Plaintiffs Gregory and Evelyn Bunce, by and through undersigned counsel, hereby renew their Motion to Compel discovery in this case, pursuant to District of Vermont Local Rule 26(c). In support of their Motion, Plaintiffs state as follows:

## I. INTRODUCTION: STATUS OF ONGOING DISCOVERY DISPUTES

In recent filings,[1] Plaintiffs have outlined for the Court three categories of ongoing disagreement between the parties as fact discovery draws to a close. The three categories of discovery are set forth below, but only the last is the subject of this Renewed Motion to Compel.

[1] *See* ECF No. 108, Plaintiffs' Motion to Further Amend Stipulated Discovery Schedule and ECF No. 110, Plaintiffs' Reply Memorandum in support of the foregoing.

### A. Additional Witnesses with Discoverable Information

The first ongoing dispute pertains mostly to former Glock employees or trainers who were not named in discovery responses or 30(b)(6) depositions, despite having relevant information due to the nature of their employment. In fact, Glock's Answers to Interrogatories fail to name a single employee with relevant information about the claims or defenses asserted in this case other than Glock's general counsel. In supplemental disclosures served on October 5, 2026, Glock, Inc. and Glock Ges.m.b.H. (collectively, "Glock") named two additional employees – Ges.m.b.H. executive Josef Kroyer and former Glock, Inc. employee William Carmichael.

However, these individuals were already known to Plaintiffs because they were deposed prior to October 5, 2026. Glock's supplemental disclosures failed to name a single current or former employee with actual, personal knowledge of Plaintiffs' claims or the defenses at issue in this case.

Plaintiffs' Supplemental Disclosures served on today's date are attached here as Exhibit 1. Most of these additional witnesses (except for Chad Mathis) were discovered in recent depositions of fact witnesses. These individuals presumably have knowledge of sales, distribution, and marketing efforts by Glock during the applicable time periods ordered by the Court, yet they have never been disclosed by Glock.

As set forth in the Declaration of Laura White in Support of Plaintiff's Renewed Motion to Compel attached here as Exhibit 2, Plaintiffs' counsel has reached out to Glock several times to arrange a meet and confer since filing the Motion to Further Amend Stipulated Discovery Schedule. The parties are attempting to connect by

phone either tomorrow or another time this week. Plaintiffs will update the Court after that meet and confer as to the status of this discovery dispute.

**B. Emails and Spoliation of Evidence**

The first availability that counsel for Glock has offered to meet and confer about discovery disputes raised by Plaintiffs in ECF No. 108 and 110 (and emails prior to that) is tomorrow, November 10, 2026. In any event, Plaintiffs no longer seek court resolution regarding the emails produced by Glock in response to the ESI protocol. The spreadsheet that Glock produced summarizing ESI results revealed ***only seven*** responsive emails that originated from and was sent to a Glock employee. Plaintiffs therefore reserve their right to file motions *in limine* regarding spoliation of evidence given the dearth of emails produced by Defendants from Glock representatives rather than the National Sports Shooting Foundation.

Regarding law enforcement studies, Plaintiffs will confer with Glock about providing some sort of verification under oath addressing its failure to retain a single study, report, email, or other document explaining why a law enforcement agency decided not to buy Glock pistols. Plaintiffs propose to update the Court with the status of this dispute, and the timing of Plaintiffs' FOIA requests, immediately after the meet and confer.

**C. Remaining Discovery Dispute Prompting This Renewed Motion to Compel: The Law Enforcement Issue**

The remaining discovery dispute that is the subject of this Motion to Compel is referred to herein collectively as the law enforcement ("LE") issue, which can be broken down into subparts as follows:

1. LE studies, reports, and agency decisions about whether to use a Glock pistol, which are critically important, proportional, and relevant to the consumer expectations test at issue in this case.

2. Glock's U.S. Military/Army submission, which has renewed relevance given the new information that Glock altered the pistols it had already manufactured for the Army with a manual safety, but removed the safety before selling to U.S. consumers as the Glock 19X.

As indicated in Exhibit 2, the parties are at an impasse on the LE issue, and the upcoming meet and confer is not likely to be productive. Nonetheless, if the parties are able to narrow their dispute over the LE issue in any way, that information will be provided to the Court immediately.

## II. BACKGROUND OF DISCOVERY DISPUTES REGARDING THE LE ISSUE AND MILITARY SUBMISSION

In their original Motion to Compel, Plaintiffs sought discovery about the U.S. Army submission of a Glock pistol with a manual safety, which had been requested at RFP No. 27. *See* ECF No. 74 at p. 16-17. Although Glock admits that it is feasible to design the Glock 26 with a manual safety, its defense highlights the purported dangers associated with having a manual safety on a firearm. The U.S. military submission is important evidence to counter that defense.

In RFP No. 18 to both Defendants, Plaintiffs furthermore requested studies about the difference in consumer expectations between LE and non-LE consumers. *Id.* at 19. Back then, Plaintiffs noted that Glock had already produced reports mostly

focused on testing of Glocks by various LE agencies—with approval from those LE agencies, of course, because that approval is what Glock's entire defense rests on. *Id.* at n.18.

On May 29, 2025, this Court conducted a hearing on Plaintiffs' Motion to Compel and Defendants' Motion for a Protective Order, which involved the LE issue, among other things. *See* ECF No. 80. During that hearing, counsel explained that, to the best of Plaintiffs' knowledge, "just on the information that we currently have, there has been no Glock pistol model marketed for civilians that has a manual safety." ECF No. 80 at 6:19-22. Further, counsel recounted Plaintiffs' understanding at the time, which was that: "The military rejected" the proposal of the Glock 19 with a manual safety, which was the only known instance at the time "where Glock has made a firearm with a manual safety." At the time, Plaintiffs lacked information about the Glock 19X.

During the conference, Glock's argument was that "no one wants" a manual safety—not LE and not civilians. *Id.* at 8:7-21. In fact, the essence of Glock's entire defense in this case is that manual safeties make a pistol less safe—an anecdotal fallacy that Plaintiffs must be able to counterattack. Enter the U.S. military submission, which shows that the U.S. Army did want—in fact mandated—that all of their handguns have a manual safety. These facts are critical to Plaintiffs' claims and rebutting Glock's defense.

The Court understandably expressed reservations about taking discovery "way off track" and getting into the weeds with the U.S. Army submission. *Id.* at 20:9-25.

The Court explained that the Glock 19 developed for the U.S. Army was "not proportional" to the needs of this case "unless I'm missing something." *Id.* The Court was understandably concerned that inflammatory, irrelevant evidence about why the U.S. Army did not select the Glock would be presented to a jury. However, the Army's rejection of the Glock is not why the submission has probative value. In all likelihood, the Army rejected Glock's bid due to cost, which again is not relevant to Plaintiffs' claims here. The probative facts pertain to why the Army thought a manual safety was necessary, and documents showing communications between Glock and the Army about the issue of a manual safety, including Glock's own admissions about the risks and benefits of including a manual safety on a handgun.

Plaintiffs explained during the hearing that Glock likely made statements to the Army about the safety and reliability of the pistol it developed with a manual safety, which is important evidence to counter Glock's defenses here. *Id.* at 22:3-18. The Court then indicated that cross-examination about modifying the Glock 19 with a manual safety would be permissible. However, based on the information known at the time, anything further would be too "far afield." *Id.* at 23:1-15.

Next, the Court discussed the differences between a Glock pistol manufactured and sold for military versus household consumer use, indicating they are "just completely different consumer bases." *Id.* at 25:9-20. The Court also indicated that the reasonable expectations of military gun users would be very different from the average consumer. *Id.* Plaintiffs agree conceptually with the Court's view about the difference between military and civilian firearm use. *Id.* at 26-27. However, in the

2019 magazine Glock Annual, the Glock 19X was glorified as a "earth-shattering . . . crossover pistol for everyday civilian life." *See* Exhibit 3 (Year One: Glock 19X from Glock Annual 2019, Bates No. Glock 3743-3745). To the extent that the Glock 19X took the very same guns manufactured with a manual safety and removed them before selling those guns to U.S. consumers, that information is highly relevant because it shows that Glock once again considered the issue of a manual safety within just a few years of Peter Bunce's death.

Exhibit 3's advertisement of the Glock 19X is peppered with information conflating military, LE, and civilian applications of the Glock pistol, which as discussed below is similar to how Glock will defend this case. Although the needs of LE and civilians are of course different from a commonsense standpoint, consumer expectations and popularity of the Glock with both LE agencies and consumers are closely track one another. Indeed, consumer demand grows out of the LE market when it comes to handgun sales.

Glock will defend this case vigorously by boasting that, as written in the 2019 Glock Annual publication, "65 percent of police departments in America put a GLOCK pistol between them and the problem." Exhibit 3, Bates No. Glock 3744. As discussed below, Glock has utterly failed to produce any evidence about why the remaining 35% of LE agencies have not switched to Glock. This evidence is critical to rebutting Glock's defenses.

Expert testimony in this case will reveal that Glock's dominance in the consumer handgun marketplace was achieved only by winning over the LE market

first. In fact, Glock's 65% LE market share bragging right is the only way Defendants were able to revolutionize and dominate the U.S. consumer handgun market.

## III. ARGUMENT

### A. Legal Standard

Pursuant to District of Vermont Local Rule 26(c), Plaintiffs have "conferred with opposing counsel in a good faith effort to reduce or eliminate the controversy," to no avail. This is an ongoing discovery dispute dating back before the May 29, 2025 conference with the Court. The Declaration of Jed Miller submitted in connection with ECF No. 74, combined with the Declaration of Laura White submitted as Exhibit 2, satisfy the requirements of Rule 26(c)(2).

Plaintiffs move under Fed. R. Civ. P. 26 and 37 for an order compelling discovery of what is now clearly relevant information. The Court has appropriately focused thus far on proportionality of the information related to LE and military handgun use. However, the evolving circumstances of discovery in this case make the information sought in this Motion to Compel directly proportional to the needs of this case. *See Trailsedge Owners Ass'n v. NED Ski Assocs., LLC,* 2026 U.S. Dist. LEXIS 165051, *15-16 (D. Vt. July 16, 2026) ("Discovery must be 'proportional to the needs of the case, Federal Rule of Civil Procedure 26(b)(1), and the court must limit discovery that is unreasonably cumulative, duplicative, or obtainable from a more convenient source.").

Proportionality "seeks to prevent over-discovery," and "Rule 26(b)(2)(C) instructs courts to limit discovery to the extent that 'the burden or expense of the

proposed discovery outweighs its likely benefit." *Woelfle v. Black & Decker (U.S.) Inc.*, 2020 U.S. Dist. LEXIS 43308, *5 (W.D.N.Y. March 12, 2020). While proportionality reasonably limited the Court's earlier decision in May of 2025 about the U.S. Military submission, the new information about the Glock 19X being sold to U.S. consumers with the manual safety possibly removed changes that analysis. Furthermore, while at first blush the concept of LE use of Glock pistols may not appear to be proportional because that is a different market from U.S. consumers, that difference disappears because Glock's entire defense is built on LE adopting, and then evangelizing, its pistols in order to create civilian consumer demand.

### B. Glock's Entire Defense Depends on Its Popularity in the Law Enforcement Market, Which Inspired Sales in the Consumer Marketplace

When asked in Interrogatory Number 10 why it did not include a manual safety on the Glock 26, Glock answered as follows: "[B]ased on Glock's knowledge of the market for semi-automatic pistols in the United States, and Glock's position as the market leader in the United States for decades, the features and advantages of the Glock pistol design have achieved wide-spread acceptance by military, law enforcement and commercial consumers throughout the world."

In answer to Interrogatory Number 12, Glock stated that it was "aware of numerous studies performed prior to March of 1996 evaluating the design and performance of Glock pistols by various law enforcement agencies, including the use by female officers and civilians, as well as studies and papers detailing the right to self-defense (See GLOCK000041-GLOCK000820)." Glock has produced studies where

LE agencies concluded it was the superior firearm, but none of the ones that reached a different conclusion. Glock has also produced a spreadsheet spanning more than 600 pages, which shows all the LE agencies and officers carrying a Glock pistol. Glock has convenient omitted (or failed to track) any spreadsheet showing which LE agencies are in the 35% that are critical of its pistols because the lack of a manual safety is dangerous to officers and consumers alike.

The way discovery has been conducted thus far, Glock has the advantage of producing only the documents that evangelize its product and then relying on the Court's decision that the LE market is too distinct to be relevant to avoid ever having to confront evidence to the contrary. This creates the untenable result that Glock can defend with all the reasons its product is the best and most popular handgun ever made, and Plaintiffs have no ability to rebut that defense. The Court cannot allow this tactic to stand.

The expert phase of this case will necessarily involve opinions about how closely the consumer handgun market follows the LE market. Glock has already made sweeping generalizations in pleadings before this Court to the effect that "no one wants" a manual safety—not LE and not consumers. The Court must allow Plaintiffs to obtain documents (including those submitted to the U.S. military) and cross examine Glock's experts with evidence to the contrary.

## IV. CONCLUSION

For all of the foregoing reasons, Plaintiffs move this Court for an order compelling Defendants Glock, Inc. and Glock Ges.m.b.H. to produce the following:

A. All documents in its possession concerning law enforcement studies, evaluations, reports, or communications about the decision not to purchase Glock pistols for its officers because of the lack of a manual safety. This request is not limited in temporal scope because Glock's discovery responses showing all the LE agencies that have switched to Glock do not appear to be limited to any particular time frame.

B. Documents referencing the design or safety features of the Glock 19 that was manufactured for the U.S. Army in or about 2016.

C. All documents in Glock's possession related to any alteration in the pistol developed for the U.S. Army in or about 2016 to sell the pistol to civilians as the Glock 19X.

Respectfully submitted,

Dated: November 9, 2026

*/s/ Laura H. White*

_____________________________

Laura H. White, Esq. (Bar No. 4025)
*Attorney for Plaintiffs*
WHITE & QUINLAN, LLC
62 Portland Road, Suite 21
Kennebunk, Maine 04043
(207) 502-7484
*lwhite@whiteandquinlan.com*

**CERTIFICATE OF SERVICE**

I, Laura H. White, hereby certify that on this 9th day of November, 2026, I filed the foregoing Plaintiffs' Renewed Motion to Compel with the Court's CM/ECF system, which automatically sends notification to all counsel of record.

Dated: November 9, 2026

*/s/ Laura H. White*

_______________________________

Laura H. White, Esq. (Bar No. 4025)
*Attorney for Plaintiffs*
WHITE & QUINLAN, LLC
62 Portland Road, Suite 21
Kennebunk, Maine 04043
(207) 502-7484
*lwhite@whiteandquinlan.com*